**Nathan BROOKS, Individually and on Behalf of All Other Persons Similarly Situated, Plaintiffs**

v.

**HALSTED COMMUNICATIONS, LTD., et al., Defendants.**

**No. 07–cv–30164–MAP.**

United States District Court, D. Massachusetts.

May 26, 2009.

William J. Anthony, Jackson Lewis LLP, Hartford, CT, Douglas J. Hoffman, Robert H. Morsilli, Gayle A. Rana, Jackson Lewis LLP, Boston, MA, for Defendants.

Suzanne Garrow, Thomas J. McCormick, Heisler, Feldman, McCormick & Garrow, P.C., Springfield, MA, Jeffrey S. Morneau, Donohue, Hyland & Donohue, PC, Holyoke, MA, for Plaintiffs.

## MEMORANDUM AND ORDER REGARDING CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT (Dkt. Nos. 113 & 116)

PONSOR, District Judge.

### I. INTRODUCTION

The cross motions for partial summary judgment filed by the parties place the court in a labyrinth that would have baffled the resourcefulness of Tom Sawyer in McDougal's cave.

Plaintiffs are technicians employed by Defendant Halsted Communications, Ltd. ("Halsted, Ltd."). Defendants are Halsted Ltd.; Halsted Communications, LLC; and Kirk Halsted. The heart of the issue is whether, for a certain period of time, Defendants were obliged to pay Plaintiffs time and a half for overtime as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and Mass. Gen. Laws ch. 151, §§ 1A and 1B, or were freed from any such obligation by virtue of an exemption set forth in the Motor Carrier Act ("MCA"), 29 U.S.C. § 213(b)(1) and adopted by Massachusetts, Mass. Gen. Laws ch. 151, § 1A(8). The maze-like weave between the FLSA requirement and the MCA exemption has evolved through three different federal statutory enactments and has generated a modest burst of conflicting decisional law. The parties' cross motions seek contrasting interpretations of the law.

For the reasons set forth below, the court will side with Plaintiffs here and will hold that Defendants did not enjoy the exemption and Plaintiffs were entitled to overtime pay during the pertinent time period. As will be seen, a contrary ruling would lead to the absurd result that an employer with 1,000 employees all driving vehicles weighing less than 10,000 pounds would be able rid itself of any obligation to pay FLSA overtime to these otherwise covered employees simply by buying one vehicle weighing over 10,000 pounds and assigning one employee to drive it occasionally across state lines. It is a crazy world, but we can hope that it is not yet that crazy.[1]

### II. PROCEDURAL AND FACTUAL BACKGROUND

In summary, Plaintiffs seek a ruling that the MCA exemption, which previously protected Defendants from the overtime provisions of the FLSA, has been inapplicable to Defendants since August 10, 2005, the effective date of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), Pub.L. No. 109–59, § 4142, 119 Stat. 1144, 1747 (2005). Defendants seek partial summary judgment in their favor as to

---

1. Defendants have also moved for summary judgment on issues not directly related to the relationship between the FLSA and the MCA. With the exception of Plaintiffs' claim under New York law, as to which Defendants' motion will be allowed without opposition, these aspects of Defendants' motion will be denied without prejudice for the reasons set forth at the end of this memorandum.

Plaintiffs' overtime claims for two periods. First, pursuant to a "safe harbor" provision in the SAFETEA–LU Technical Corrections Act of 2008 ("TCA"), Pub.L. No. 110–244, §§ 305–06, 122 Stat. 1572, 1620–21 (2008), Defendants assert they are not obliged, as a matter of law and fact, to pay FLSA overtime from August 10, 2005 to August 9, 2006. Second, as to the period from March 13, 2007 to the present, Defendants assert they are entitled to summary judgment based on re-qualifying for the MCA exemption on that date by becoming a registered "motor carrier" with the USDOT. Related to this last point, Defendants argue alternatively that they are entitled to summary judgment at least as to claims from March 2008 to the present, because in March 2008 they contend that they undisputably began paying all employees in accordance with FLSA regulations.

Plaintiffs initiated this lawsuit in September 2007; this court preliminarily certified the litigation as an FLSA collective action on April 30, 2008. (Dkt. Nos. 1, 58.) Before the completion of discovery the parties proposed to file cross motions for summary judgment to obtain a clarification of the reach of the MCA exemption, and Magistrate Judge Kenneth P. Neiman entered a scheduling order, Dkt. No. 112, directing the parties to "file their discrete partial motions for summary judgment by October 31, 2008." *Id.* at 1. Judge Neiman noted that, following a ruling on these motions, a further scheduling order would issue "if necessary." *Id.*

For purposes of the court's ruling on the cross motions, the following facts are undisputed. Each Plaintiff was employed as a technician by Halsted Ltd. at some point between August 10, 2005 and the present.

A technician's job responsibilities included driving vehicles between work sites in connection with the activation, installation and service of satellite television equipment. Not a single plaintiff ever drove a vehicle that weighed more than 10,000 pounds. Indeed, at the relevant time, less than one percent of Halsted Ltd.'s entire fleet comprised vehicles weighing over 10,000 pounds.[2] Since March 13, 2007, Defendant Halsted Ltd. has been a motor carrier registered with the United State Department of Transportation ("USDOT") based on its operation of one or more vehicles weighing over 10,000 pounds.

### III. *DISCUSSION*

■ "Summary judgment is appropriate where 'there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law.' " *Coffin v. Bowater, Inc.,* 501 F.3d 80, 85 (1st Cir.2007) (citing Fed.R.Civ.P. 56(c)). "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Group, Inc. v. Ferre Dev., Inc.,* 241 F.3d 103, 107 (1st Cir.2001).

### A. *Legal Overview.*

Under the FLSA, employers are required to compensate employees at a rate of one and one-half their regular hourly rate of pay for any hours over forty that the employees work in a given week. 29 U.S.C. § 207. The statute's provisions were designed to "protect all covered workers from substandard wages and oppressive working hours" by ensuring that covered workers received " 'a fair day's

---

**2.** Plaintiffs charge, without expressed disagreement from Defendants, that during the relevant period Halsted Ltd. in fact had only two trucks weighing over 10,000 pounds and

only one driver assigned to them. (Dkt. 128, Pls.' Reply to Defs.' Opp'n to Mot. for Summ. J. 3 n. 6.)

pay for a fair day's work.' " *Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (Brennan, J.) (quoting President Roosevelt's message to Congress at 81 Cong. Rec. 4983 (1937)).

 The First Circuit has made it clear that an employer who suggests that its employees do not enjoy FLSA protections "bears the burden of establishing that its employees are exempt, and because of the remedial nature of the FLSA, exemptions are to be narrowly construed against the employers seeking to assert them. . . ." *De Jesus–Rentas v. Baxter Pharmacy Servs. Corp.*, 400 F.3d 72, 74 (1st Cir.2005) (citing *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir.1995)).

The Secretary of Transportation can "prescribe requirements for . . . qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier . . . when needed to promote safety of operation." 49 U.S.C. § 31502(b). Prior to August 2005, the term "motor carrier" as used in 49 U.S.C. § 31502(b) meant simply "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102 (2002) (amended 2005 and restored 2008). An exemption in the MCA meant motor carriers did not have to pay FLSA-mandated overtime to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1). The effect of the pre–2005 definition of "motor carrier" was to exempt all drivers employed by motor carriers, regardless of the weight of their vehicles, from the overtime provisions of the FLSA. *See United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 553, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (limiting the reach of the MCA exemption to "those employees whose activities affect the safety of operation").

It is worth noting that this broad exemption created a potential blind spot with regard to certain workers in the motor carrier industry, for the following reason. The Supreme Court established, early on, that the MCA exemption from FLSA coverage depended only upon the *existence* of power by the Secretary of Transportation to establish maximum hours of service. *See Morris v. McComb*, 332 U.S. 422, 434, 68 S.Ct. 131, 92 L.Ed. 44 (1947). In fact, the Secretary of Transportation actually *exercised* his or her power only with regard to the larger interstate vehicles, *i.e.* those weighing over 10,000 pounds, recognizing the "Congressional policy of applying available Federal motor carrier safety resources to larger vehicles." *Friedrich v. U.S. Computer Serv.*, 974 F.2d 409, 414 (3rd Cir.1992) (quoting 53 Fed.Reg. 18,042, 18,044 (May 19, 1988)). This emphasis reflected the fact that lighter vehicles are "similar to a large automobile and generally pose no greater safety risk . . . when used on the highway." *Id.* (quoting 53 Fed.Reg. 18,504).

Unfortunately, the USDOT's understandable emphasis on larger vehicles for many years left employees driving vehicles of 10,000 pounds or less without the protection either of the Secretary of Transportation's hours-of-work regulations or the FLSA.

In 2005 Congress passed SAFETEA–LU, an appropriations bill containing language that amended the MCA exemption as of August 10, 2005 by changing the definition of motor carrier. Pub.L. No. 109–59, § 4142, 119 Stat. 1144, 1747 (2005). Pursuant to SAFETEA–LU, the term "commercial motor vehicle" replaced the term "motor vehicle" in the definition of "motor carrier." Commercial motor vehicles are those weighing at least 10,001 pounds. 49 U.S.C. § 31132(1)(A). As a result, employers *not* operating vehicles

weighing more than 10,000 pounds were no longer motor carriers and, after August, 2005, were subject to the FLSA's overtime provisions.

The fact that SAFETEA–LU narrowed the MCA exemption was apparently lost on many employers in the industry.[3] Indeed, many motor carrier employers did not adjust their compensation practices to conform to the FLSA until after employees began filing lawsuits. *See e.g. Kautsch v. Premier Commc'ns,* 502 F.Supp.2d 1007 (W.D.Mo.2007); *Dell'Orfano v. IKON Office Solutions, Inc.,* No. 5:05–cv–245 (CAR), 2006 WL 2523113, 2006 U.S. Dist. LEXIS 61563 (M.D.Ga. Aug. 29, 2006).

Perhaps in response to this situation, Congress later restored the pre-SAFETEA-LU definition of "motor carrier" when it passed the TCA, which became effective on June 6, 2008. However, even with the adjustment of this definition, the TCA reconfirmed that the MCA exemption was inapplicable to employees of motor carriers who drove motor vehicles that weighed 10,000 pounds or less. 110 P.L. 244, § 306; 122 Stat. 1572, 1620–21 (2008). Given the sharp clarity of the TCA's language, Defendants do not, and could not, dispute their obligation to pay FLSA overtime after June of 2008.

To keep the plot interesting, however, Congress used the TCA to add another passageway to the maze. Recognizing that some employers were caught off guard, or claimed to be caught off guard, by SAFETEA–LU's change in the overtime rules, the TCA freed employers from liability for any failure to pay FLSA-mandated overtime to covered employees during a one-year "safe harbor" period from August 10, 2005 to August 9, 2006, *provid-*

*ed* the employer did not have actual knowledge that the scope of the exemption had changed. *Id.* For the sake of clarity, the legislative sequence, as it bears on the issues in this case, may be summarized as follows:

1. *Up to August 10, 2005 (the effective date of SAFETEA–LU):* the MCA exemption applied regardless of vehicle weight; Defendants bore no liability for FLSA overtime. Plaintiffs claim no damages for this period.

■ 2. *August 10, 2005 to August 9, 2006:* the MCA exemption did not apply to employers with vehicles of 10,000 pounds or less. Defendants are therefore liable for FLSA overtime, unless they qualify for the TCA's "safe harbor" provisions. To be eligible for this protection, an employer must show that it did not have actual knowledge of the change in the MCA exemption. Plaintiffs concede the existence, in principle, of the "safe harbor" provision, but contend that a disputed issue of fact exists as to Defendants' actual knowledge. The court will permit Plaintiffs to complete discovery before resolving this dispute.

3. *August 10, 2006 to June 6, 2008:* The scope of the exemption is disputed. Plaintiffs contend that Defendants are liable as a matter for law for overtime under the FLSA for any employee operating a vehicle of 10,000 pounds or less during this period. Defendants appear to concede implicitly that they are liable for overtime for the period from August 10, 2006 through March 12, 2007. However, they contend that this liability ceased on March 13, 2007 when they became a registered "motor carrier" under the revised requirements of SAFETEA–LU.[4] This is the legal issue

---

**3.** Defendants contend that SAFETEA–LU's impact on overtime liability was unintentional, something Plaintiffs do not concede.

**4.** Defendants' argument that Halsted Ltd. became entitled to the MCA exemption only by

registering with the USDOT is curious, in light of their contention that they complied with the statutory definition of "motor carrier" prior to that. At least one court has found registration irrelevant. *See Collins v.*

that has bedeviled a number of district courts and is the primary subject of this memorandum.

■ 4. *June 7, 2008 (the effective date of the TCA) to Present*: Regardless of the MCA, all employees operating vehicles under 10,000 pounds are entitled to overtime compensation as mandated by the FLSA, pursuant to the TCA. Defendants contend that they have no liability for any FLSA overtime during this period, because they began paying their employees full FLSA wages, including time-and-a-half for overtime, starting on March 3, 2008 and up to the present. Plaintiffs contest this claim, and the court will permit them further discovery before resolving the dispute.

**B.** *Applicability of the MCA Exemption.*

■ Defendants posit that, during the roughly 15–month period from March 13, 2007 through June 6, 2008, the MCA exemption protected them from liability for any FLSA overtime claims. Their argument may be summarized as follows.

First, it is undisputed that Halsted Ltd. as of March 13, 2007 registered itself with the USDOT and the Federal Motor Carrier Safety Administration ("FMCSA") as a motor carrier and was issued a USDOT number. At this point, Defendants say, they formally became a "motor carrier." [5]

Second, 29 U.S.C. § 213(b)(1) exempts from the FLSA "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."

Third, 49 U.S.C. § 31502 gives the Secretary of Transportation "the power to establish qualifications and maximum hours of service of employees of, and safety and operation of equipment of, a motor carrier...."

Fourth, "motor carrier" is defined in 49 U.S.C. § 13102 as "a person providing commercial motor vehicle (as defined in § 31132) transportation for compensation."

Fifth, 49 U.S.C. § 31132(1) defines "commercial motor vehicle" as a "self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater...." [6]

Halsted Ltd., the argument runs, possesses at least one "commercial motor vehicle," with which it provides transportation for compensation. Therefore it is a "motor carrier"; therefore the Secretary of Transportation has the power to establish maximum wages for its employees; therefore it is exempted from the provisions of the FLSA—even though 99% of its trucks weigh less than 10,000 pounds and, presumably, a similar percentage of its drivers use the lower-weight, non-commercial vehicles exclusively. In short, according to Defendants, prior to passage of the TCA in 2008, one vehicle over 10,000 pounds, regularly (though not necessarily frequently) used in interstate commerce to transport people or property, could vaccinate an employer from the obligation to pay FLSA overtime to the entire body of its drivers.

*Heritage Wine Cellars, Ltd.*, No. 07–CV–1246, 2008 WL 5423550, at *9–10 n. 5, 2008 U.S. Dist. LEXIS 104555, at *26–27 n. 5 (N.D.Ill. Dec. 29, 2008).

**5.** Defendants have not claimed the benefit of the exemption prior to registration. *See supra* note 4.

**6.** Other categories of commercial motor vehicle are identified in this subsection but are not relevant.

Plaintiffs' response to Defendants' argument moves the focus of the argument from the employer to the employee. Their primary argument is that when SAFE-TEA–LU changed the definition of "motor carrier" for purposes of the exemption, it effectively, and necessarily, changed the definition of "employee" as well. Plaintiffs emphasize the inconsistency of permitting Defendants to cite 49 U.S.C. § 31132(1) for the definition of "commercial motor vehicle" in order to establish their entitlement to the exemption, while ignoring the very next provision of this section, 31132(2), which defines "employee" as "an operator of a commercial motor vehicle...." When SAFETEA–LU reduced the power of the Secretary of Transportation to reach only *commercial* motor carriers, it necessarily also reduced the scope of the Secretary's power over employees, so that (as explicitly defined in section 31132(2)) it only reached "an operator of a commercial motor vehicle."

Plaintiffs' construction of SAFETEA–LU has been strongly supported by the Department of Labor, whose field bulletin stated that with "the passage of SAFE-TEA–LU on August 10, 2005, an employee is covered by the [MCA exemption] only if that employee is engaged in transportation involving a 'commercial motor vehicle.'" *See* U.S. Dep't of Labor, Wage & Hour Division, Field Assistance Bulletin No. 2007–2. Defendant pooh-pooh's this argument by suggesting that it was only the Secretary of Transportation who could set wages for these employees, not the Secretary of Labor, but this rebuttal simply begs the question of who was in charge.[7]

Moreover, Plaintiffs' interpretation of the impact of SAFETEA–LU received further support in two provisions of the TCA. First, scant necessity would exist for the TCA's "safe harbor" provision if employers had no exposure to FLSA liability for their employees who operated light weight trucks, so long as the employer had at least one vehicle weighing over 10,000 pounds. It was the existence of this very exposure that prompted Congress to palliate the potential impact of SAFETEA–LU by setting up the one-year "safe harbor" to begin with. Second, to the extent that some case law interpreting SAFETEA–LU suggested that it would be onerous, and bad policy, to require employers to treat drivers of light vehicles differently from drivers of vehicles over 10,000 pounds, the TCA affirmed that Congress had no problem endorsing precisely this requirement.

Finally, Plaintiffs emphasize that this is an extreme case factually. Unlike other cases discussed below, where the majority, or a substantial proportion, of the plaintiffs in a collective action regularly (or at least sometimes) operated vehicles weighing over 10,000 pounds, it is undisputed that not a single driver in this action *ever* on *any* occasion operated a commercial vehicle or is ever likely to do so.

As noted, the question of whether a "hybrid" motor carrier—*i.e.*, one with drivers operating vehicles weighing both above and below 10,000 pounds—was obliged to pay FLSA overtime to its drivers of lighter vehicles before June 6, 2008 has produced conflicting answers. The weight of district court authority (no appellate decision has as yet appeared), however, strongly favors Plaintiffs. Cases supporting Plaintiffs' position include *Hernandez v. Brink's, Inc.*, No. 08–20717–CIV, 2009 WL 113406, 2009 U.S. Dist. LEXIS 2726 (S.D.Fla. Jan. 15, 2009) (ruling that mixed fleets containing both commercial and noncommercial vehicles should be treated for FLSA purposes as two separate sub-

---

**7.** Defendant also points out that USDOL bulletins are entitled to diminished interpretive weight. This argument is correct, but it does not justify ignoring them.

fleets); *Tews v. Renzenberger, Inc.,* 592 F.Supp.2d 1331, 1346 (D.Kan.2009) (rejecting argument that "the mere presence of commercial motor vehicles in [a] fleet renders all employee-drivers exempt under the MCA exemption"); *Vidinliev v. Carey International Inc.,* 581 F.Supp.2d 1281 (N.D.Ga.2008) (denying summary judgment regarding the applicability of the MCA exemption for claims arising after August 10, 2005 where the defendant operated a mixed fleet of commercial and noncommercial motor vehicles); *Kautsch v. Premier Communications,* 502 F.Supp.2d 1007 (W.D.Mo.2007) (ruling that the MCA exemption did not apply to the plaintiffs' claims after August 10, 2005 because they did not operate *commercial* motor vehicles). Cases supporting Defendants include *Collins v. Heritage Wine Cellars, Ltd.,* No. 07–CV1246, 2008 WL 5423550, 2008 U.S. Dist. LEXIS 104555 (N.D.Ill. Dec. 29, 2008) and *Tidd v. Adecco USA, Inc.,* No. 07–11214–GAO, 2008 WL 4286512, 2008 U.S. Dist. LEXIS 69825 (D.Mass. Sept. 17, 2008).

*Collins* is easily distinguishable on its facts, lying at the opposite extreme from this case. Plaintiffs there overwhelmingly drove vehicles over 10,000 pounds, driving non-commercial vehicles only on a "few occasions." *Collins,* 2008 WL 5423550, at *19, 2008 U.S. Dist. LEXIS 104555, at *59. The *Collins* court conceded that a factual scenario where "at all times" Plaintiffs drove vehicles under 10,001 pounds would support a different result. *Id.* at *20–21 n. 11, 2008 U.S. Dist. LEXIS 104555 at *64–65 n. 11.

Defendants offer as primary support for their position *Tidd,* a case from this district, holding that even following enactment of SAFETEA–LU the MCA exemption applied to all drivers working for a commercial motor carrier, regardless of whether some portion of the class members, some of the time, operated vehicles weighing 10,000 pounds or less. 2008 WL 4286512, 2008 U.S. Dist. LEXIS 69825. Like *Collins, Tidd* is distinguishable factually on the ground that, while the proportions are not explicitly disclosed in the court's memorandum, it is clear that the class in that case was not composed, as the class before this court now is, *entirely* of drivers who operated only vehicles weighing 10,000 pounds or less.

Moreover, the *Tidd* court's most detailed analysis of the issues was handicapped by the fact that counsel did not disclose to the court, and the court did not initially consider, the 2008 enactment of the TCA.[8] Thus the court's discussion concentrated on the policy implications of subjecting an employer to one body of regulations as to some of its drivers and another regulatory regime as to others. The court found that a "more sensible" approach in these circumstances was an "either-or" interpretation. *Id.* at *3–4, 2008 U.S. Dist. LEXIS 69825 at *11. *Tidd* recognized that "the FLSA does hinge the applicability of some exemptions on what the employee does" but "hinges others on what the employer does" and concluded that the MCA exemption is "more like the second method than the first." *Id.* at *4, 2008 U.S. Dist. LEXIS 69825 at *12.

The exclusion of any discussion of the TCA from this analysis meant that the court was blind to Congress' recent approval of precisely this dual regime. Starting in June 2008, all employers in the motor carrier industry were required to distinguish for purposes of compensation between employees who operated light vehicles and those operating commercial ve-

---

**8.** The TCA first came before the *Tidd* court on a motion for reconsideration, which is discussed below.

hicles. Any basis for favoring the "either-or" approach was gone. While the TCA was not retroactive, this expression of Congress' attitude towards the alignment of employees into contrasting groups for purposes of compensation was highly probative.

Moreover, the analysis of what "the employer does" in this case leads to a conclusion opposite to *Tidd.* Halsted Ltd. is not, ninety-nine times out of a hundred, an owner or operator of commercial vehicles. It is not "what Halsted Ltd. does."

This point was emphasized in the *Tidd* court's ruling on a motion for reconsideration that first raised the TCA. The court denied the motion for two reasons. First the TCA-related arguments were not timely raised. Second, the TCA did not answer the question: does the MCA exemption cover employees "who may regularly or occasionally be limited to vehicles that are not 'commercial motor vehicles'?" *Tidd v. Adecco USA, Inc.,* No. 07–11214–GAO, Dkt. No. 88, slip op. at 3 (D.Mass. Jan. 21, 2009).

At the risk of repetition, that is not the question before this court. Here the question is whether, for the period following SAFETEA–LU but prior to the enactment of the TCA, Defendants have carried their burden of showing that the MCA exemption applied to employees who *exclusively* operated light vehicles. *Tidd,* by its own terms, does not answer that question.

The most helpful and persuasive decisions on the pertinent question here are *Tews v. Renzenberger, Inc.,* 592 F.Supp.2d 1331 (D.Kan.2009), and *Vidinliev v. Carey International, Inc.,* 581 F.Supp.2d 1281 (N.D.Ga.2008).

In *Tews,* it was conceded that "the vast majority of plaintiffs" did not operate commercial motor vehicles. 592 F.Supp.2d at 1335. In fact, commercial vehicles made up only four percent of the defendant's fleet. *Id.* Moreover, Judge Lungstrum

discussed Department of Labor regulations and Supreme Court authority, *United States v. American Trucking Ass'ns,* 310 U.S. 534, 553, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), making it clear that for purposes of applying the MCA exemption in other contexts (*e.g.,* for determining whether a driver operated in interstate commerce) the significance of the "individual employee's activities" drove the proper application of the exemption. *Tews,* 592 F.Supp.2d at 1345. In other words, even before SAFETEA–LU the law did not demand an "either-or" approach.

In *Vidinliev* Judge Thrash noted that " '[t]he exemption of an employee ... depends both on the class to which his employer belongs and on the class of work involved in the employee's job.' " 581 F.Supp.2d at 1285 (quoting 29 C.F.R. 782.2(a)). He noted that employees of motor carriers who did not "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce" were not exempt from FLSA requirements even if employed by a motor carrier. *Id.* (citing 29 C.F.R. 782.2(a)). This regulation, he noted, was developed following the Supreme Court's *American Trucking* decision, which limited the applicability of the MCA exemption to those employees whose job duties affected a carrier's "safety of operations," not all employees of motor carriers. *Id.* (citing *Am. Trucking Ass'ns,* 310 U.S. at 553, 60 S.Ct. 1059).

The *Vidinliev* court disposed of the defendant's argument in that case that the MCA exemption applies if it "has *some* commercial vehicles in its fleet" by noting that "if this were true, then a motor carrier could buy one commercial motor vehicle and thereafter all of its drivers would be exempt from overtime pay, no matter how

remote or infrequent the possibility of an interstate trip in a commercial motor vehicle." *Id.* at 1294. This reasoning is directly applicable to this case and is persuasive.

## IV. *CONCLUSION*

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment as to the Inapplicability of the Motor Carrier Act Exemption (Dkt. No. 113) is hereby ALLOWED, and Defendants' Motion for Partial Summary Judgment (Dkt. No. 116) is hereby DENIED, except as to any claims under New York law, as to which the motion is ALLOWED without opposition. The portions of Defendants' Motion for Summary Judgment regarding the "safe harbor" provision of the TCA and regarding the payment of overtime wages after March 2008 are DENIED without prejudice pending completion of discovery.

This case is hereby referred to Magistrate Judge Kenneth P. Neiman for a scheduling conference pursuant to Fed. R.Civ.P. 16. Counsel should have in mind that, under the terms of the Civil Justice Reform Act, this case must be closed no later than three years from filing, by September 4, 2010. *See* 28 U.S.C. § 476.

It is So Ordered.